UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

EMERY TAYLOR,                                                                    Plaintiff,

v.                                                              Civil Action No. 3:21-cv-84-DJH-CHL

ROBERT NEFF et al.,                                                        Defendants.

* * * * *

**MEMORANDUM OPINION AND ORDER**

Plaintiff Emery Taylor alleges that former Louisville Metro Police Department (LMPD) officer Robert Neff, while on duty and in his police uniform, visited the gas station where she worked and sexually assaulted her on multiple occasions.  (Docket No. 1)  Taylor asserts various state-law claims against Neff, as well as a claim under 42 U.S.C. § 1983.  (*Id.*, PageID # 7–9)  She also seeks to hold Louisville/Jefferson County Metro Government (Metro Government) liable for Neff's alleged sexual misconduct under § 1983.  (*Id.*, PageID # 7)  Metro Government moves to dismiss Taylor's § 1983 municipal-liability claim against it for failure to state a claim.  (D.N. 4)  For the reasons explained below, Metro Government's motion to dismiss will be granted.

**I.**

The following facts are set out in the complaint and are accepted as true for purposes of the motion to dismiss.  *See Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012).  In March 2020, Taylor worked at a Thorntons gas station in Louisville.  (D.N. 1, PageID # 5)  Neff, who was an officer with LMPD at the time, visited Taylor's workplace "[a]t various times" that month "while on duty" and, on several occasions, "groped, assaulted[,] or otherwise offensively touched Taylor and sexually abused her."  (*Id.*, PageID # 4–5)  On March 10 and 11 specifically, Neff "requested that Taylor kiss him"; "expressed . . . his desire to be in a relationship" with her;

"attempted to coerce her to enter into a sexual relationship with him"; and "made other unwanted sexually explicit advances towards Taylor." (*Id.*, PageID # 4–5)  At least twice during those two days, Neff also followed Taylor into a back room and touched her "in a sexually suggestive manner" without her consent.  (*Id.*, PageID # 5)  During the first incident, Neff, while in uniform and "under the guise of performing a police search," fondled Taylor's "chest area" and "placed his hands on other parts of her body."  (*Id.*)  Neff later followed Taylor into a back room again and "put his hand into her shirt and around her bra area and ran his hands up and down her body, including the inside of her legs."  (*Id.*)  And at some point, Neff "removed parts of Taylor's clothing and refused to give [them] back unless and until she took off other parts of her clothing under Neff's direction," a threat that Taylor managed to rebuff.  (*Id.*)

Taylor reported Neff's misconduct to another LMPD officer, and LMPD investigated Taylor's allegations and "concluded that they were true."  (*Id.*)  Neff was later criminally charged in state court for his encounters with Taylor, and in October 2020, he pleaded guilty to charges of official misconduct and sexual misconduct, which eventually resulted in his termination from LMPD.  (*Id.*, PageID # 6)

In her complaint, Taylor asserts state-law claims of assault and battery, intentional infliction of emotional distress, and false imprisonment against Neff, along with other violations of Kentucky law.  (*Id.*, PageID # 8–9)  She further claims that Neff's conduct deprived her of her rights under the United States Constitution in violation of 42 U.S.C. § 1983.  (*Id.*, PageID # 7)  And she brings a § 1983 municipal-liability claim against Metro Government,[1] alleging among

---

[1] The named defendants in Taylor's complaint are (1) Neff in his personal and official capacities and (2) "Louisville Kentucky Metro County Government and/or the Louisville Metro Police Department."  (D.N.1, PageID # 1)  Taylor lists LMPD as a separate party.  (*Id.*, PageID # 3)  But she also states in her complaint that "[t]he Defendants Louisville Metro Police Department and the Louisville Kentucky Metro County Government are hereinafter sometimes referred to collectively

other things that it "failed to institute or enforce any (or adequate) policies, customs or practices, or to screen and/or employ qualified persons, or to properly train or supervise its officers and its employees[,] including Neff, or investigate complaints by the public," and that it "explicitly or implicitly authorized, approved[,] or knowingly acquiesced to [Neff's] clearly unconstitutional actions and conduct," all of which "exhibited a deliberate indifference . . . to the Constitutional rights of the citizens of the City of Louisville and Taylor specifically." (*Id.*, PageID # 4, 7)  Metro Government now moves to dismiss Taylor's § 1983 claim against it under Federal Rule of Civil Procedure 12(b)(6).  (D.N. 4)

## II.

### A.

As a threshold matter, Taylor argues in her response to Metro Government's motion to dismiss that the motion "must be treated as one for [s]ummary [j]udgment" under Rules 12(d) and 56 rather than a motion to dismiss under Rule 12(b)(6).  (D.N. 8, PageID # 48)  Rule 12(d) provides

---

as 'Louisville Metro,'" which suggests that she considers LMPD and Metro Government to be part of the same entity.  (*Id.*)  Regardless, LMPD is not an entity that can be sued under § 1983.  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).  Rather, any claims against LMPD are against Metro Government as the real party in interest.  *See id.* (noting that "since [a] [p]olice [d]epartment is not an entity which may be sued" under § 1983, the county government was instead "the proper party to address" allegations of constitutional violations committed by the police); *Fakhri v. Louisville-Jefferson Cty. Metro. Gov't*, No. 3:19-cv-50, 2019 WL 4196056, at *4 (W.D. Ky. Sept. 4, 2019) (imputing a municipality-liability claim brought against LMPD to Metro Government).  Accordingly, Metro Government is the proper party to address Taylor's allegations against LMPD, *see Matthews*, 35 F.3d at 1049, and Metro Government acknowledges as much in its motion to dismiss.  (*See* D.N. 4-1, PageID # 26)  The Court will therefore only refer to Metro Government when addressing Taylor's allegations against the department.  It also gives notice to the parties of its intent to dismiss Taylor's § 1983 claim against LMPD sua sponte, to which Taylor will have an opportunity to respond.  *See Estate of Abdullah ex rel. Carswell v. Arena*, 601 F. App'x 389, 396 (6th Cir. 2015) (noting that before dismissing a claim sua sponte, a district court must "notify all parties of its intent to dismiss" that claim and "give the plaintiff a chance to either amend his complaint or respond to the reasons stated by the district court in its notice of intended *sua sponte* dismissal" (quoting *Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983)).

that "[i]f, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d).  Here, Taylor attached what she describes as the "underlying criminal court record" from Neff's October 2020 guilty plea in state court as an exhibit to her response. (D.N. 8, PageID # 47; *see* D.N. 8-1)  The attached court record shows that on October 12, 2020, Neff pleaded guilty in Jefferson District Court to two counts of official misconduct and one count of sexual misconduct for the several unwanted sexual advances he made against Taylor in March 2020.  (*See* D.N. 8-1, PageID # 59–60)  And since the record is "outside the pleadings" that have been filed in this matter, *see* Fed. R. Civ. P. 12(d), Taylor asserts that the Court is obligated to convert Metro Government's motion to dismiss into a summary-judgment motion.  (D.N. 8, PageID # 47–49)

Conversion is not required here, however.  Given that district courts "may consider . . . public records" when reviewing a Rule 12(b)(6) motion, the Court could consider Neff's state-court record without implicating Rule 12(d).  *See Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008).  In any event, a district court "has the discretion to ignore" any extra-pleading materials that are presented as part of a Rule 12(b)(6) motion and instead "resolve the motion solely on the basis of the pleadings." *Seum v. Osborne*, 348 F. Supp. 3d 616, 630 (E.D. Ky. 2018) (citing *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 405 (6th Cir. 2012)); *see* Fed. R. Civ. P. 12(d) (requiring that a Rule 12(b)(6) motion be converted into a summary-judgment motion only when "matters outside the pleadings are presented to *and not excluded by the court*" (emphasis added)).  And that is what the Court will do here.  The state-court record indicates that Neff pleaded guilty in October 2020 to several criminal charges stemming from his misconduct toward Taylor.  (*See* D.N. 8, PageID # 47; D.N. 8-1, PageID # 59–60)  But Taylor already alleges

4

in her complaint that "[a]ccording to public records, Neff plead[ed] guilty . . . on or about October 12, 2020" to several state charges "in connection with" that same misconduct (D.N. 1, PageID # 6), which is an allegation that the Court must accept as true for purposes of the present motion. *See Keys*, 684 F.3d at 608. Accordingly, since Taylor's extra-pleading exhibit adds nothing of relevance beyond what is already alleged in her complaint, the Court will disregard it, treat the present motion as a motion to dismiss under Rule 12(b)(6), and thus limit its review to the allegations in Taylor's complaint. *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 484 (6th Cir. 2020) (acknowledging that a district court must expressly reject extra-pleading evidence in order to avoid triggering Rule 12(d)).

## B.

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At the motion-to-dismiss stage, a district court must "view the complaint in the light most favorable to the plaintiff" and "take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009). Factual allegations are essential; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor do "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). And legal conclusions "are not entitled to the assumption of truth." *Id.* at 679. A complaint whose "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" fails to "show[] that the pleader is entitled to relief," Fed.

R. Civ. P. 8(a)(2), and thus will not withstand a motion to dismiss. *Iqbal*, 556 U.S. at 679; *see Twombly*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").

### III.

The present motion only concerns the municipal-liability claim that Taylor asserts against Metro Government—namely, that the "unconstitutional actions" committed by Neff against Taylor while Neff was an LMPD officer "were the result of a written or unwritten policy, custom[,] or practice on the part of [Metro Government]," and that this municipal policy was, in turn, the "'moving force' behind . . . Taylor's constitutional injury." (D.N. 1, PageID # 7) Neff's alleged misconduct was reprehensible by any metric, and the Court has no occasion at this stage of the litigation to assess the sufficiency of the § 1983 claim and the various state-law claims that Taylor brings against Neff individually.[2] (*See id.*, PageID 7–9) For purposes of the present motion, the Court must instead decide only whether Taylor's complaint states a § 1983 municipal-liability claim against Metro Government that is "plausible on its face." *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

---

[2] At the Rule 12(b)(6) stage, the Court normally qualifies misconduct described in a complaint as *alleged* misconduct since a plaintiff's claims, while accepted as true for purposes of resolving a motion to dismiss, *see Keys*, 684 F.3d at 608, are still unsubstantiated allegations. The Court notes, however, that none of the parties here dispute the fact that Neff admitted to committing at least some of the misconduct that Taylor alleges in her complaint when he pleaded guilty in October 2020 to two charges of official misconduct in violation of Ky. Rev. Stat. § 522.020 and one charge of sexual misconduct in violation of Ky. Rev. Stat. § 510.140. (*See* D.N. 8-1, PageID # 59; D.N. 4, PageID # 31 (accepting as true Taylor's allegation that Neff was criminally convicted "as a result of the illegal conduct [he] perpetuate[d] towards [Taylor]")) The Court does not need to determine at this point the extent of the overlap between what Neff pleaded guilty to in state court and what Taylor alleges in her complaint. Yet while the Court will describe Neff's misconduct here as "alleged" for the sake of clarity and consistency, it acknowledges that this misconduct is not, as a practical matter, a mere allegation.

Section 1983 creates a federal cause of action against any "person" who "subjects . . . any citizen of the United States . . . to the deprivation of" a federal right while acting "under color" of state law.  42 U.S.C. § 1983.  While municipalities "are considered persons for purposes of § 1983 liability," such municipal liability "attaches only under a narrow set of circumstances."  *Jackson v. City of Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).  A local government cannot be held liable under § 1983 "*solely* because it employs a tortfeasor."  *D'Ambrosio v. Marino*, 747 F.3d 378, 388–89 (6th Cir. 2014) (emphasis in original) (quoting *Monell*, 436 U.S. at 691).  Rather, a "cognizable" § 1983 municipal-liability claim requires a plaintiff to allege that "(1) agents of the municipality, while acting under color of state law, (2) violated the plaintiff's constitutional rights, and (3) that a municipal policy or policy of inaction was the moving force behind the violation."  *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 902 (6th Cir. 2004).

Metro Government does not challenge Taylor's claim that Neff's alleged sexual misconduct violated her constitutional rights.[3]  (*See* D.N. 1, PageID # 7; D.N. 4-1, PageID # 28 (acknowledging Neff's "illegal behavior"))  Instead, it argues that Taylor's § 1983 claim against it should be dismissed because (1) based on Taylor's allegations, Neff was not acting under color

---

[3] It is well established in the Sixth Circuit that "sexual abuse by a state actor" violates the victim's constitutional rights.  *See Doe v. Claiborne Cty.*, 103 F.3d 495, 507 (6th Cir. 1996) (holding that such abuse violates the "fundamental" right "to personal security and to bodily integrity" protected by the "substantive component of the Due Process Clause"); *see also United States v. Morris*, 494 F. App'x 574, 580 (6th Cir. 2012) (noting that "aggravated sexual abuse" committed by a county sheriff "violate[d] the victim's Fourteenth Amendment Due Process Rights"); *Whitledge v. City of Dearborn*, No. 18-cv-11444, 2019 WL 4189496, at *6 (E.D. Mich. Sept. 4, 2019) (stating that *Morris* and another Sixth Circuit case "provide sufficient notice to law enforcement officers that sexual assault of a traffic stop detainee amounts to a constitutional violation"); *Compton v. City of Harrodsburg*, No. 5:12-cv-302, 2013 WL 663589, at *5 (E.D. Ky. Feb. 22, 2013) (observing that "§ 1983 claims that involve sexual abuse or harassment by a state actor . . . have been consistently construed as Fourteenth Amendment violations of substantive due process rights").

of state law when he sexually harassed and assaulted her, and (2) Taylor has "offered no facts" in her complaint that plausibly suggest the "existence" of a municipal policy that "constitute[d] the 'moving force' behind the illegal acts perpetrated by Neff against her." (*See id.*, PageID # 28–32) The Court will address each argument in turn.

## A.

Metro Government first argues that Taylor fails to state a § 1983 municipal-liability claim "because any illegal acts committed by Neff were done solely by him and were not done under any[] 'color of any statute, ordinance, regulation, custom, or usage.'" (D.N. 4-1, PageID # 30 (quoting 42 U.S.C. § 1983))  This is so, Metro Government contends, because Taylor reported Neff's "illegal acts . . . to another LMPD officer," which indicates that she "understood Neff's actions to be contrary to the actual law of the state and without the authority of LMPD." (*Id.*, PageID # 31)  And according to Metro Government, Neff's eventual termination from LMPD for violating the law and department policies means that his misconduct "w[as] not made possible by the authority of the state." (*See id.*, PageID # 31–32)

A police officer "acts under color of state law when he purports to exercise official authority." *Memphis, Tenn. Area Local*, 361 F.3d at 903.  "[M]anifestations" of such "official authority" can include "flashing a badge, identifying oneself as a police officer, [or] placing an individual under arrest." *Id.*  What matters, in short, is whether an officer "present[s] himself" externally "as a police officer," *Parks v. City of Columbus*, 395 F.3d 643, 652 (6th Cir. 2005), and attempts to exercise the "power" that comes with that position by virtue of being "clothed with the authority of state law," *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).  *See Parks*, 395 F.3d at 652 (finding that an off-duty police officer acted under color of state law because he was "dressed in his official police uniform," displayed

8

his badge, identified himself as an officer, and threatened to arrest the plaintiff); *Chapman v. Higbee Co.*, 319 F.3d 825, 834–35 (6th Cir. 2003) (concluding that "the initiation of a strip search by an armed, uniformed sheriff's deputy" working off duty as a private security guard nonetheless "constituted an act that may fairly be attributed to the state").

Given this standard, Neff's conduct as alleged in Taylor's complaint was clearly committed under color of state law.  Taylor asserts that Neff harassed her, made unwanted sexual advances toward her, and repeatedly touched her in a "sexually suggestive manner" all while "*on duty and in uniform*."  (D.N. 1, PageID # 5 (emphasis added))  And on at least one occasion, Neff allegedly fondled Taylor's "chest area" and other parts of her body "under the guise of performing a police search."  (*Id.*)  Neff therefore both "presented himself as a police officer" to Taylor when he repeatedly harassed and assaulted her while in uniform, *see Parks*, 395 F.3d at 652, and "purported" to wield "official authority" when he subjected her to an invasive and degrading police search, *see Memphis, Tenn. Area Local*, 361 F.3d at 903.

That Neff's misconduct was beyond the scope of his official duties and in violation of LMPD's policies does not mean, as Metro Government contends, that he "acted . . . without the authority of the state." (*See* D.N. 4-1, PageID #32)  A police officer or other state actor still "acts under color of state law" even when he or she "abuses the position given to him [or her] by the State."  *West*, 487 U.S. at 50; *see also Classic*, 313 U.S. at 326 ("Misuse of power, possessed by virtue of state law . . . is action taken 'under color of' state law.").

In sum, Taylor has adequately alleged that Neff acted under color of state law when he sexually assaulted her while wearing his LMPD uniform and while seemingly exercising the authority that ordinarily comes with serving as a police officer.  *See* 42 U.S.C. § 1983 (requiring

that the deprivation of a federal right be committed by a "person" acting "under color of" state law).

## B.

Even if Neff acted under color of state law, however, that does not necessarily mean that Metro Government can be held liable for his unconstitutional conduct. *See Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005) ("A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.'" (quoting *Monell*, 436 U.S. at 694)). For her § 1983 municipal-liability claim to survive Metro Government's motion to dismiss, Taylor must also plausibly allege that Neff's constitutional violation—here, the alleged sexual misconduct he committed against her while presenting himself as an LMPD officer—"must have sprung from" an official municipal policy or custom "in one form or another." *Alman v. Reed*, 703 F.3d 887, 902 (6th Cir. 2013). Put another way, a decision by Metro Government, an act by a Metro Government policymaker, or a "practice[]" at Metro Government that was "so persistent and widespread as to practically have the force of law," *see Connick v. Thompson*, 563 U.S. 51, 61 (2011) (defining "[o]fficial municipal policy"), must have been "the moving force behind [Neff's] violation." *See Memphis, Tenn. Area Local*, 361 F.3d at 902; *see also Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403 (1997) ("[W]e have required a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury.").

The Sixth Circuit has identified at least four ways a plaintiff can properly plead that a municipality had an official policy or custom that caused a violation of his or her constitutional rights. *See D'Ambrosio*, 747 F.3d at 386. A plaintiff can allege "(1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority

ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance [of] or acquiescence [to] federal rights violations." *Id.* (alterations in original) (quoting *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013)).   Taylor seems to advance each of these theories in her complaint to some extent. (*See* D.N. 1, PageID # 4, 6–7)   But as explained below, even when viewed in the light most favorable to her, *Tackett*, 561 F.3d at 488, Taylor's complaint simply does not contain enough "factual content" under any theory of municipal liability to "allow[] the [C]ourt to draw the reasonable inference" that Metro Government had an official policy or custom that caused Neff to violate Taylor's constitutional rights. *See Iqbal*, 556 U.S. at 678.

## 1.    Official Policy

Taylor claims that Neff's alleged sexual misconduct "w[as] the result of a written or unwritten policy . . . on the part of" Metro Government.  (D.N. 1, PageID # 7)  To the extent that this is an attempt to proceed under the theory of municipal liability in which a plaintiff must allege "the existence of an illegal official policy or legislative enactment," *D'Ambrosio*, 747 F.3d at 386, that attempt fails.  Taylor's suggestion that Metro Government had a formal policy of permitting or tolerating sexual misconduct committed by its employees is not "plausible on its face."  *See Twombly*, 550 U.S. at 570.  "Clearly, no municipality could have such a policy." *Doe v. Claiborne Cty.*, 103 F.3d 495, 508 (6th Cir. 1996) (responding to the suggestion that a municipality had a formal policy of "affirmatively condoning sexual abuse").  Indeed, Taylor's allegation that LMPD investigated her claims of sexual assault and eventually terminated Neff once those claims were corroborated (D.N. 1, PageID # 5–6) indicates that, far from conforming to LMPD's policies, Neff's alleged misconduct violated them.  Thus, Taylor's assertion that Neff's alleged misconduct

was the product of an official municipal policy falls short of meeting the pleading standard required to survive a motion to dismiss.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

**2.      Ratification**

Taylor next alleges that Metro Government "explicitly or implicitly authorized, approved[,] or knowingly acquiesced to the clearly unconstitutional actions and conduct of its employee, [O]fficer Neff" (D.N. 1, PageID # 7), which appears to base municipal liability on the theory that Metro Government either authorized Neff to sexually assault Taylor or ratified his alleged sexual misconduct after the fact.  Yet both versions of Taylor's ratification theory fail to "plausibly suggest" that she is "entitle[d] to relief."  *Iqbal*, 556 U.S. at 681.

To properly plead a municipal-liability claim under the theory that "an official with final decision making authority ratified illegal actions," *D'Ambrosio*, 747 F.3d at 386, a plaintiff can allege (1) that "an individual with policymaking authority issue[d] a final decision affirming a subordinate's decision on the merits or otherwise . . . thereby adopting it as municipal policy," or (2) that "a policymaker fail[ed] to meaningfully investigate the [unconstitutional] acts of a subordinate."  *Meyers v. Cincinnati Bd. of Educ.*, 343 F. Supp. 3d 714, 729 (S.D. Ohio 2018); *see Scott v. Louisville/Jefferson Cty. Metro Gov't*, 503 F. Supp. 3d 532, 537–38 (W.D. Ky. 2020) ("An official acting with final decision-making authority may ratify the unconstitutional acts of its employees in two ways.").  Taylor does not adequately allege either method of ratification.

As an initial matter, a ratification theory of municipal liability "applies only when the ratification was carried out by an official with final decision-making authority."  *Brown v. Chapman*, 814 F.3d 447, 462 (6th Cir. 2016); *see D'Ambrosio*, 747 F.3d at 386.  Nowhere in her complaint does Taylor "name a final decisionmaker" at LMPD or Metro Government who ratified Neff's alleged misconduct either before or after it occurred, which alone warrants dismissing her

ratification theory. *See Brown v. Chapman*, 814 F.3d at 462 (noting that a ratification theory of municipal liability cannot be based on a mere allegation that a "police department, as a whole, ratified" an officer's unconstitutional conduct); *cf. Scott*, 503 F. Supp. 3d at 538 (declining to dismiss a ratification-based municipal-liability claim against LMPD in part because the complaint identified at least three municipal policymakers by name—the mayor, police chief, and assistant police chief—who allegedly ratified unconstitutional conduct).

Even if Taylor had identified a municipal policymaker at Metro Government in her complaint, she does not allege that Metro Government "affirm[ed]" Neff's alleged misconduct or "fail[ed] to meaningfully investigate" it. *See Meyers*, 343 F. Supp. 3d at 729. In fact, Taylor alleges the opposite: according to her complaint, LMPD "conducted an investigation into the allegations asserted by Taylor, and concluded that they were true." (D.N. 1, PageID # 5) And rather than ratifying Neff's sexual misconduct, LMPD clearly disapproved of it, as evidenced by Neff's eventual termination from the department. (*Id.*, PageID # 6)

At bottom, because Taylor has both failed to adequately plead an essential element of a ratification theory and alleged facts that plead the theory out of court, that theory cannot sustain her § 1983 claim against Metro Government. The claim must be dismissed. *See NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 458 (6th Cir. 2007) ("Nothing prevents a plaintiff from pleading itself out of court . . . .").

### 3. Failure to Train or Supervise

Taylor's complaint can also be read as basing her municipal-liability claim on "the existence of a policy of inadequate training or supervision." *D'Ambrosio*, 747 F.3d at 386. Specifically, she alleges that Metro Government "failed . . . to properly train or supervise its [police] officers and its employees[,] including Neff" and that Neff's alleged sexual misconduct

13

was the result of Metro Government's "failure to adequately train, or adequately supervise [him]." (D.N. 1, PageID # 4, 7)  Once again though, Taylor falls short of "stat[ing] a plausible claim for relief" sufficient to survive a motion to dismiss.  *Iqbal*, 556 U.S. at 679.

To base municipal liability on a failure-to-train theory, a plaintiff must allege that "1) the [municipality's] training program was inadequate for the tasks that officers must perform; 2) the inadequacy was the result of the [municipality's] deliberate indifference; and 3) the inadequacy was closely related to or actually caused the injury" alleged.  *See Jackson*, 925 F.3d at 834 (quoting *Ciminillo v. Streicher*, 434 F.3d 461, 469 (6th Cir. 2006)) (articulating the elements of a failure-to-train theory of municipal liability).  Taylor fails to adequately plead at least two of these elements.

First, the "focus" of a failure-to-train claim "must be on [the] adequacy" of the municipality's training program.  *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Yet Taylor alleges nothing about what training LMPD officers received and why it was "inadequate for the tasks that [they] must perform."  *Id.* (quoting *Ciminillo*, 434 F.3d at 469). Instead, she only offers conclusory assertions that Metro Government's training and supervision of LMPD officers were improper and inadequate (*see* D.N. 1, PageID # 3–4, 7), which the Court need not credit.  *See Iqbal*, 556 U.S. at 681.

Taylor's allegation that Neff specifically was inadequately trained (D.N. 1, PageID # 7) does not save her failure-to-train theory.  "That a particular officer may be unsatisfactorily trained will not alone suffice to fasten" § 1983 liability on a municipality because an individual officer's "shortcomings" may be the result of "factors other than a faulty training program."  *City of Canton*, 489 U.S. at 390–91.  Nor would Taylor be helped if her complaint were construed as alleging that the constitutional violations she suffered "could have been avoided" if Neff "had had better or

14

more training, sufficient to equip him to avoid [his] particular injury-causing conduct." *See id.* at 391 (rejecting such an argument because it "could be made about almost any [police] encounter resulting in injury, yet not condemn" the general adequacy of a police training program). Indeed, it cannot be said that LMPD officers like Neff need formal training to know that committing sexual harassment or assault while on duty qualifies as "injury-causing"—and illegal—behavior. *Id.; see Campbell v. Anderson Cty.*, 695 F. Supp. 2d 764, 774 (E.D. Tenn. 2010) ("[N]o specific training [i]s necessary to inform officers not to rape or sexually assault women in their custody."); *Williams v. City of Detroit*, No. 07-14858, 2009 WL 3059150, at *4 (E.D. Mich. Sept. 24, 2009) (collecting cases confirming that "numerous courts" in the failure-to-train context "have concluded that a governmental entity or its officials are not required to train a police officer not to commit sexual misconduct").

Second, an inadequate training program can give rise to municipal liability under § 1983 only when "the inadequacy was the result of the [municipality's] deliberate indifference." *Jackson*, 925 F.3d at 834; *see City of Canton*, 489 U.S. at 388–89. "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate" such deliberate indifference. *Connick*, 563 U.S. at 62 (2011) (quoting *Bd. of Cty. Comm'rs*, 520 U.S. at 409). Here, however, Taylor offers no factual allegations—as opposed to "mere conclusory statements" that are "not entitled to the assumption of truth," *Iqbal*, 556 U.S. at 678–79— suggesting that there were prior instances of sexual misconduct committed by other LMPD officers such that Metro Government was "on notice that its training and supervision . . . w[ere] deficient." *See Burgess*, 735 F.3d at 478 (noting that a municipal-liability claim based on a failure-to-train theory requires a showing of a pattern of unconstitutional conduct). And this failure to plead a pattern of similar constitutional violations is likewise fatal to her failure-to-train theory. *See*

*Connick*, 563 U.S. at 62 ("Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights."); *see also Fletcher-Hope v. Louisville-Jefferson Cty. Metro Gov't*, No. 3:18-cv-468, 2019 WL 498853, at *3 (W.D. Ky. Feb. 8, 2019) (dismissing a failure-to-train theory of municipal liability at the pleading stage because the plaintiff "ma[de] no attempt to suggest the existence of even one other instance of prior unconstitutional conduct"); *Whitledge v. City of Dearborn*, No. 18-11444, 2019 WL 4189496, at *11 (E.D. Mich. Sept. 4, 2019) ("[T]he actions of a single officer fall short of the extensive misconduct necessary to demonstrate deliberate indifference on the part of the City as to the need for additional training.").

In rare circumstances, "the unconstitutional consequences" of a municipality's failure to train its police officers "could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. But Neff's alleged sexual misconduct cannot give rise to this sort of "single-incident liability." *Id.* Even if Taylor had sufficiently alleged that Metro Government failed to properly train or supervise Neff, the Court simply cannot conclude that Neff's sexual assault of a citizen he was obligated to protect was a "patently obvious" consequence of such a failure. *See id.* at 64–66; *see also Campbell*, 695 F. Supp. 2d at 775 (rejecting as a "viable legal theory" the argument that "the plainly obvious result of [a municipality's] lack of supervision" of one of its deputy sheriffs "would be a sexual assault"); *cf. Shadrick v. Hopkins Cty.*, 805 F.3d 724, 742 (6th Cir. 2015) (concluding that the "need to train . . . nurses who lack knowledge about the constitutional dimensions of providing adequate medical care to inmates in the jail setting" is so "obvious" that a municipality's failure to provide such training "falls squarely within" the range of "single-incident liability" recognized in *Connick*).

In short, Taylor has failed to adequately plead the requisite elements of a failure-to-train theory, and her municipal-liability claim thus cannot survive a motion to dismiss on that basis. *See Iqbal*, 556 U.S. at 678.

### 4.     Custom of Tolerance or Acquiescence

Another municipal-liability theory that can be elicited from Taylor's complaint is that Metro Government had an informal "custom of tolerance [of] or acquiescence [to] federal rights violations." *D'Ambrosio*, 747 F.3d at 386 (alterations in original).  Taylor alleges at different points in her complaint that Metro Government "knowingly acquiesced to [Neff's] clearly unconstitutional actions"; "conscious[ly] and deliberate[ly]" decided not to fire Neff "upon discovering his unfitness for duty as a law enforcement officer"; and "failed to . . . investigate complaints by the public to prevent or alleviate [the] conditions" that presumably gave rise to Neff's alleged sexual misconduct.  (D.N. 1, PageID # 4, 6–7)

To adequately plead a municipal-liability claim under a custom-of-tolerance theory, a plaintiff must allege (1) "'a clear and persistent' pattern of unconstitutional conduct by municipal employees"; (2) "'notice or constructive notice' of the unconstitutional conduct" on the municipality's part; (3) "the municipality's 'tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction'"; and (4) "that the policy of inaction was the 'moving force' of" the plaintiff's "constitutional deprivation." *D'Ambrosio*, 747 F.3d at 387–88 (alterations in original) (quoting *Doe*, 103 F.3d at 508).

Here, Taylor has failed to adequately allege a "clear and persistent pattern" of unconstitutional conduct within LMPD's ranks, let alone that Metro Government knew about and tacitly approved of such a pattern. *See id.*  Nowhere in her complaint does Taylor mention another

instance where Metro Government learned about and then condoned, tolerated, or failed to investigate sexual misconduct committed by an LMPD officer.  And this lack of an alleged pattern is alone sufficient to dismiss her custom-of-tolerance theory.  *See D'Ambrosio*, 747 F.3d at 388 (noting that allegations of constitutional violations committed by only one municipal employee was a "pleading deficiency" warranting the dismissal of a custom-of-tolerance theory); *Burgess*, 735 F.3d at 478 ("[A] custom-of-tolerance claim requires a showing that there was a pattern of inadequately investigating similar claims."); *cf. Lipman v. Budish*, 974 F.3d 726, 748–49 (concluding that allegations of "six different instances" of the same constitutional violation sufficed to plead a "custom" that could give rise to municipal liability).  Moreover, the single incident of sexual misconduct by an LMPD officer that Taylor does plead with some detail—that is, Neff's alleged sexual harassment and assault of Taylor herself—was not tolerated by LMPD, but rather was investigated with some urgency and ultimately resulted in Neff's removal from the department.  (D.N. 1, PageID # 5–6).

Taylor's complaint could arguably be construed as alleging that Metro Government ignored a pattern of constitutional violations committed by Neff individually.  For instance, Taylor claims that Neff "had been reprimanded at least twice" by LMPD prior to his alleged sexual misconduct against her, and she suggests that Metro Government's failure to discipline or fire Neff "upon discovering his unfitness for duty as a law enforcement officer" amounted to deliberate indifference to Taylor's rights.  (*See* D.N. 1, PageID # 5–7)  But nothing in Taylor's complaint indicates that Neff's two prior reprimands were in any way related to sexual misconduct such that Metro Government was put on notice of any predisposition on his part to sexually harass and assault people.  *See D'Ambrosio*, 747 F.3d at 388 (requiring in the custom-of-tolerance context

18

that a plaintiff "plausibly allege the [municipality's] 'notice or constructive notice' of habitually unconstitutional conduct" (quoting *Doe*, 103 F.3d at 508)).

All in all, Taylor attempts to plead "a municipal-wide" custom at Metro Government of tolerating sexual assaults committed by LMPD officers "based solely on" Neff's "one instance of . . . [alleged] misconduct." *See Thomas*, 398 F.3d at 432 ("This argument, taken to its logical end, would result in the collapsing of the municipal liability standard into a simple *respondeat superior* standard.")  Yet that single instance, while deplorable, cannot give rise to municipal liability under a custom-of-tolerance theory.

## 5.    Failure to Screen

Finally, Taylor alleges that "Neff should not have been hired" as a police officer in the first place, and she seems to suggest that Metro Government can be held liable for Neff's alleged sexual misconduct because it failed to "properly screen [him] upon application to [LMPD]."  (D.N. 1, PageID # 6–7)

"[P]laintiffs seeking to impose municipal liability as a result of hiring decisions" face a "heavy burden." *Doe v. Magoffin Cty. Fiscal Ct.*, 174 F. App'x 962, 967 (6th Cir. 2006).  A hiring decision can give rise to municipal liability under § 1983 only if that decision "reflects" the municipality's "deliberate indifference" to the risk that constitutional violations "will follow the decision." *Bd. of Cty. Comm'rs*, 520 U.S. at 411.  And a municipality's failure to adequately screen an applicant for a law enforcement position amounts to such deliberate indifference "[o]nly where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right." *Sweat v. Butler*, 90 F. Supp. 3d 773, 783 (W.D. Tenn. 2015) (quoting *Bd. of Cty. Comm'rs*, 520 U.S. at 411).  That is, a plaintiff must

plausibly allege "that [a particular] officer was highly likely to inflict the *particular* injury suffered. *Id.* (emphasis in original) (quoting *Bd. of Cty. Comm'rs*, 520 U.S. at 412).

Taylor's allegations regarding Metro Government's decision to hire Neff as a police officer do not meet this high standard.  Her assertion that LMPD "fail[ed] to properly screen Neff upon application to the department" (D.N. 1, PageID # 7) is "devoid of 'further factual enhancement'" and thus need not be accepted as true.  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see Sweat*, 90 F. Supp. 3d at 783 (concluding that a similarly conclusory allegation was "insufficient to state a plausible claim for municipal liability on a failure to screen theory"). Furthermore, she does not allege any past misconduct by Neff that would have indicated to LMPD that, at the time of his hiring, Neff was generally "unfit[] for duty as a law enforcement officer" (*see* D.N. 1, PageID # 6), let alone that he was likely to commit sexual assault while on duty.  *See Bd. of Cty. Comm'rs*, 520 U.S. at 412 ("The connection between the background of the particular applicant and the specific constitutional violation alleged must be strong.").  And given this silence about Neff's background, Taylor fails to adequately state a municipal-liability claim under a failure-to-screen theory.  *See Sweat*, 90 F. Supp. 3d at 783 (dismissing a failure-to-screen theory because the plaintiffs failed to "provide any facts displaying a connection between prior incidents of misconduct and the harm suffered in th[eir] case"); *Okolo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 945 (M.D. Tenn. 2012) ("No allegations about [a police officer's] background are included in the [complaint]. Thus, no [municipal-liability] claim based on inadequate screening of [that officer] has been pled.").

## IV.

For the reasons discussed above, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)     Metro Government's motion to dismiss (D.N. 4) is **GRANTED**.  Taylor's § 1983 claim against Metro Government is **DISMISSED**.  The Clerk of Court is **DIRECTED** to terminate Metro Government as a defendant in the record of this matter.  The dismissal of Metro Government does not affect Taylor's claims against any other defendant.

(2)     The Court hereby gives **NOTICE** to the parties of its intent to dismiss Taylor's § 1983 claim against LMPD sua sponte.  Within **twenty-one (21) days** of the date of entry of this Order, Taylor shall **SHOW CAUSE** why her claim against Defendant LMPD should not also be dismissed for the reasons explained in footnote 1 above.

December 17, 2021

**David J. Hale, Judge**
**United States District Court**