# SHANNON S. VOOR, PH.D.

## CONFIDENTIAL PSYCHOLOGICAL EVALUATION

| | | |
|---|---|---|
| **NAME:** | Emery Taylor |  |
| **DATE OF BIRTH:** | 07/29/1996 | |
| **DATE OF EVALUATION:** | 01/21/2022 | |
| **DATE OF REPORT:** | 01/27/2022 | |

### NOTICE OF PURPOSE AND LIMITS OF CONFIDENTIALITY

Before proceeding with the evaluation and for all persons whom I contacted in relation to this evaluation, I identified myself, my professional role in the case and the purpose of the evaluation. I provided Ms. Taylor an oral and written explanation of the nature and general purpose of this evaluation, as well as the limitations on confidentiality as contained in the informed consent. I informed Ms. Taylor I am a psychologist performing an evaluation requested by Ashely Abaray, Esq. of Cooper and Friedman, PLLC. I explained information I obtained during the evaluation could be contained in a written Psychological Evaluation that would be provided to Cooper and Friedman, PLLC and possibly the Court. I also explained to Ms. Taylor the nature of the relationship precludes provision of an explanation of evaluation results. Ms. Taylor was able to verbalize she understood and was able to summarize this information in her own words. She then signed the informed consent and agreed to participate in the evaluation.

8005 Lyndon Centre Way, Suite 101, Louisville, KY 40222 | *Office* 502.807.5453 | *Fax* 502.410.5118 | shannon@shannonvoor.com

## METHODOLOGY

Psychology is the science that deals with emotional and mental processes. It is the study of a person's characteristics including how they think, feel, or behave. Psychological assessment assesses mental illness. Psychological Evaluation is a lengthy process involving in-depth clinical interview regarding patient history, the focal incident or illness, current issues as well as other factors that may influence test performance. Patient records from before the incident or illness, from the incident or illness, and since the incident or illness are reviewed.

Face-to-face psychological tests are administered according to standardized protocols. This psychologist is the administrator all tests and does not employ a 3rd party administrator in order to benefit from behavioral observations and other information obtained during interactions with the patient over an extended period of time. Test results are then scored using standardized scoring methods and interpreted based on normative data. Results are analyzed in the context of patient history and results of any previous evaluations.

## RECORDS REVIEWED

United States District Court Western District of Kentucky at Louisville
    Complaint for Damages and Jury Trial
Louisville Metro Police Department Employment Records Officer Neff
United States District Court Western District of Kentucky at Louisville
    Robert Neff Responses to 1st Set of Interrogatories
United States District Court Western District of Kentucky at Louisville
    Robert Neff Responses to 1st Set Requests for Admission Propounded By Plaintiff
United States District Court Western District of Kentucky at Louisville
    Emery Taylor's Answers and Responses
United States District Court Requests for Admission
United States District Court Plaintiff's Rule 26 Disclosures
Letter from Louisville Metro Police Department to Kentucky Law Enforcement Council 10/27/2018

Criminal Complaint 05/26/2020
Criminal Charges and Plea
WHAS-11 News Article 05/27/2020
Courier Journal News Article 05/27/2020, updated 05/28/2020
Associated Press News Article 06/01/2020
Deposition of Emery Taylor
Deposition of Robert Neff
Jennifer Curry Hoertz, LCSW, LMFT
Center for Women and Families

## PROCEDURES

Clinical Interview
Behavioral Observation
Structured Interview of Reported Symptoms-Second Edition (SIRS-2)
Beck Depression Inventory-Second Edition (BDI-II)
Beck Anxiety Inventory (BAI)
PTSD Checklist-Fifth Edition (PCL-5)
Life Events Checklist-Fifth Edition (LEC-5)
Minnesota Multiphasic Personality Disorder-Third Edition (MMPI-3)
Millon Clinical Multiaxial Inventory-Fourth Edition (MCMI-IV)

## REFERRAL & BACKGROUND INFORMATION

### REFERRAL

Emery Taylor is a 25-year old female who was referred by Ashley Abaray, Esq. of Cooper and Friedman, PLLC for evaluation to assess psychological and emotional functioning following sexual assault by Robert Neff as an on-duty Louisville Metro Police Officer.

The evaluation took place at Shannon S. Voor, Ph.D., PLLC located at 8005 Lyndon Centre Way in Louisville Kentucky.

## HISTORY OF INCIDENT

*The following history was obtained from Emery Taylor and records reviewed.*

Ms. Taylor was employed at Thorntons as a Food Services Manager when she was a victim of sexual assault by Officer Robert Neff of the Louisville Metro Police Department. Ms. Taylor explained Officer Neff frequented Thorntons on a regular basis. In March 2020, he repeatedly offered to take her to a gym and teach her police work. Although she declined each offer, he continued asking as well as providing his phone number even though each time she threw it in the trash in his presence.

Additionally, Officer Neff requested Ms. Taylor send pictures of herself to him. He told her she would get paid for the pictures because the police department posts pictures of females on social media to lure in drug dealers. She refused to provide pictures because "it sounded fishy".

On March 10, 2020, Ms. Taylor was at work and upset about an argument with her boyfriend (Joshuah). She went into the back room to text Joshuah and Officer Neff followed. When she requested he leave, he refused and continued to stand over her for 5-10 minutes while she was on her phone. Officer Neff then requested Ms. Taylor to give him a hug. Thinking he was just being friendly, she gave him a side-hug. He then gave her an unwanted second hug and kissed her on the cheek. Ms. Taylor immediately reported these events to her General Manager (Stephanie) and told Stephanie she felt uncomfortable with Officer Neff's behavior. Stephanie reportedly responded: "I know it sucks, but we need cops present in the store."

Approximately one hour later, Officer Neff returned to Thorntons and informed Ms. Taylor "I came back to check on you." When he continued to linger in the store for an extended period of time, Ms. Taylor asked him to step outside in front of the double doors (so they would not be alone) and explained she did not want to get in trouble at work, he had a girlfriend, and she just wanted to be friends. He agreed and left for the day.

On March 11, 2020, when Ms. Taylor arrived at work, Officer Neff was in the store. He said: "Let me know when you can talk." After she ignored him and continued to focus on her work, he followed her into the back room. He said: "I thought about you all day and night." He shared he and his girlfriend were having problems. Ms. Taylor responded that she and Joshuah were having problems and she wanted to work on the relationship. When she suggested he also work through the issues in his relationship, Officer Neff responded: "I thought you would grab me and kiss me" to which she responded: "Oh no." She then walked away, and he followed.

In an effort to change the topic of conversation with Officer Neff, Ms. Taylor shared a story about an past incident with Louisville Metro Police Department. When she was 18 years old, Ms. Taylor was pulled over and searched during a traffic stop. Police officers were in possession of her driver's license and auto insurance card when they were called away and inadvertently took the documents with them. When Ms. Taylor later retrieved her documents at the Police Department, a female employee explained to her she shouldn't have allowed a male police officer to perform a search without the presence of a female.

After she shared the above story with Officer Neff, he told her: "I'll show you the correct way to be searched." He began asking: "Did they do this?" while touching her. Ms. Taylor attempted to distance herself from Officer Neff by walking outside. Officer Neff continued to hover around the store repeatedly saying: "Just let me know when you want to be searched."

When Ms. Taylor and a co-worker (Beth) later went into the back room, Officer Neff followed and asked again: "Is now a good time for me to show you the way to be searched?" Ms. Taylor responded: "I guess so" thinking that agreeing would end his hovering and he would leave the store.

Officer Neff proceeded to perform a search which included instructing Ms. Taylor to lock her fingers behind her back, placing 2 fingers inside her shirt on the side of her breast, shaking her bra, and running the palm side of his fingers up the inside of both of her legs "like a rainbow". When Officer Neff asked Ms. Taylor to remove a shoe, she complied. He then asked her to remove a sock, and she refused. In response, he would not give her shoe back. After she became angry, he returned the shoe. The following day Officer Neff left for vacation in Florida.

Approximately 5 days later, Ms. Taylor shared her interactions with Officer Neff with another Louisville Metro Police Officer who frequented the store. The officer reported the information to his superiors, and Ms. Taylor was contacted by Louisville Metro Internal Affairs for an interview.

Ms. Taylor explained she is upset that to her knowledge Officer Neff was on paid leave from March until August, was provided therapy at no cost to him, and was allowed to resign rather than being terminated. She views this as unfair because she was not offered therapy and has had to continue to work while dealing with the trauma caused by the actions of Officer Neff. She feels no one has shown compassion about the impact of the sexual assaults or has offered to help her cope with the lasting effect on her mental health.

Since the above incidents, Ms. Taylor has suffered memory loss (i.e., walking into the back room and forgetting why she is there). She has experienced sleep paralysis after awakening with panic attacks on 2 occasions. Pre-existing trichotillomania that had been in remission has resurfaced.

## EDUCATIONAL & OCCUPATIONAL HISTORY

Ms. Taylor graduated from Bullitt East High School. She was employed in fast food and warehouse work until she was hired by Thorntons in 2016. During her employment at Thorntons she has received several promotions and was recently offered a promotion to General Manager that she declined due to the stress she is under since the incidents with Officer Neff.

## SOCIAL HISTORY

Ms. Taylor has never married. She resides with her boyfriend. She has a 4-year old daughter.

## MEDICATIONS

None.

## MEDICAL HISTORY

Ms. Taylor reported she reached developmental milestones within normal limits. She was diagnosed with trichotillomania at age 12. The condition had improved and Ms. Taylor no longer engaged in hair pulling until the incidents with Officer Neff.

This evaluator requested to take photos of recent effects of trichotillomania. Ms. Taylor explained she is embarrassed of the bald spots and that is why she always wears a cap to work. She cooperatively removed her cap and photos were taken of balding areas at her front hairline and left side of her head.

## MENTAL HEALTH HISTORY

*Family Therapy of Louisville*

Ms. Taylor participated in in-office counseling with Jenny Hoertz, LCSW, LMFT from February 18, 2021 until August 24, 2021. Ms. Taylor was diagnosed with Posttraumatic Stress Disorder (PTSD), Generalized Anxiety Disorder, Major Depressive Disorder, and Trichotillomania.

*Center for Women and Families*

On August 10, 2020, Ms. Taylor contacted the Center for Women and Families hotline regarding the actions of Officer Neff. She was placed on a 1 month waiting list for therapy and, in the meantime, participated in crisis intervention and advocate sessions.

On September 17, 2020, Ms. Taylor entered into therapy with Tiffany Niswonger, CSW of the Center for Women and Families. Ms. Taylor reported hypervigilance, anxiety, sleep paralysis, trust issues, and daily flashbacks. She engaged in skin and nail picking to divert her attention. During a therapy session on October 27, 2020, Ms. Taylor had learned Mr. Neff "only got 2 years of probation" and reported increased anxiety symptoms including nail-biting, hair pulling, clinginess, and memory difficulties. Ms. Taylor was tearful, overwhelmed, and shaking at times during the session. In a therapy session on December 3, 2020, Ms. Taylor reported anger and hurt because Mr. Neff was "seeming to move on".

Ms. Niswonger instructed Ms. Taylor in relaxation strategies to help with anxiety both in and outside of work. When the pandemic necessitated sessions occur via a virtual platform, Ms. Taylor participated in 1-2 more meetings before putting therapy on hiatus because she found virtual meetings less effective than in person meetings.

*Wellstone*

At the age of 15, Ms. Taylor participated in 1 week of inpatient mental health treatment at Wellstone after threatening to commit suicide during a mother-daughter conflict over household rules. Ms. Taylor noted she and her mother are now best friends and talk once or twice a day.

## SUBSTANCE USE

Ms. Taylor smokes one Black and Mild Cigar a day. She consumes alcohol approximately 4 times a year. She reported no use of recreational drugs.

## FAMILY MEDICAL HISTORY

Maternal family history is positive for hypertension. Paternal family history is unknown.

## FAMILY MENTAL HEALTH HISTORY

Maternal grandmother was diagnosed with Bipolar Disorder.

## MILITARY HISTORY

Ms. Taylor has never enlisted in the military.

## LEGAL HISTORY

Ms. Taylor reported no criminal history. She has never been party to civil litigation prior to the current case. She has never filed a Worker's Compensation or disability benefits claim. She has never filed bankruptcy.

Ms. Taylor was a victim of abuse by her daughter's biological father resulting in an Emergency Protective Order (EPO) against him. She has not spoken with him in over 3 years.

## BEHAVIORAL OBSERVATIONS & MENTAL STATUS EXAM

Ms. Taylor did not attend the initial evaluation scheduled for January 18, 2022. When contacted she stated she had forgotten about the appointment. The evaluation was rescheduled for January 21, 2022. She drove herself to the office and arrived on time. She was neatly dressed in a black jacket, black pants, black boots, Thorntons cap, glasses, and Covid 19 mask. She was friendly and cooperative in meeting me. Her speech was of normal rate and tone, and she generally made direct eye contact.

Ms. Taylor was oriented to time, place, and circumstances. Affect was appropriate. Emotional expression was consistent with conversation content. She cried when discussing the events that occurred at Thorntons. Ms. Taylor denied having thoughts

of wanting to harm herself or others. She did not endorse or exhibit any psychotic symptoms. She denied experiencing perceptual disturbances, including auditory and visual hallucinations, and she never appeared preoccupied with internal stimuli. Her thinking was organized, and her responses were well-articulated. Judgment and insight were good.

## TEST RESULTS

### EFFORT

*Structured Interview of Reported Symptoms-Second Edition (SIRS-2)*

The SIRS-2 consists of 149 items designed to assess deliberate distortion in the self-report of symptoms. It detects response style commonly associated with feigning. On the SIRS-2, Ms. Taylor's profile indicated genuine responding.

### PSYCHOLOGICAL & PERSONALITY FUNCTIONING

*Beck Depression Inventory-Second Edition (BDI-II)*

The BDI-II is a multiple-choice self-report inventory that measures the severity of depression based on how the individual has felt during the previous 2 weeks including the day of testing. Ms. Taylor's responses were in the range of severe depression. She reported she feels sad all of the time. As she looks back, she sees a lot of failures and doesn't consider herself as worthwhile and useful as she used to. She doesn't get pleasure out of things she used to enjoy and feels guilty. She feels she may be punished. She is disappointed in herself and blames herself for everything bad that happens. She is restless, irritable, and cries more than she used to. She is less interested in other people or things, has difficulty concentrating, and difficulty making decisions.

Ms. Taylor endorsed vegetative symptoms of depression including fatigue, low energy, hypersomnia, reduced appetite, and decreased libido. She reported suicidal thoughts and denied suicidal intent or plan.

*Beck Anxiety Inventory (BAI)*

The BAI is a multiple-choice self-report inventory that measures the severity of anxiety based on how the individual has felt during the previous week including the day of testing. Ms. Taylor responses were in the range of moderate anxiety.

Ms. Taylor reported she is unable to relax and fears the worst happening. She is terrified, scared, and nervous. She experiences lightheadedness, numbness/tingling, feeling hot, increased heart rate, unsteadiness, shaking, trembling, shortness of breath, indigestion, and sweating (not due to heat).

*Life Events Checklist for DSM-5 (LEC-5)*

The LEC-5 is a 17-item self-report measure developed by the National Center for PTSD designed to screen for potentially traumatic events in a respondent's lifetime. The LEC-5 assesses exposure to 16 events known to potentially result in PTSD or distress and includes one additional item assessing any other extraordinarily stressful event not captured in the first 16 items.

On the LEC-5, Ms. Taylor reported exposure to physical assault, sexual assault, other unwanted or uncomfortable sexual experience, serious accident at work, and severe human suffering all relating to the actions of Officer Neff. She further endorsed "any other very stressful event or experience" referring to her daughter's biological father suffering severe injuries in a motor vehicle accident.

*PTSD Checklist for DSM-5 (PCL-5)*

The PCL-5 is a 20-item self-report measure developed by the National Center for PTSD that assesses the presence and severity of PTSD symptoms. Referencing the unwanted sexual advances by Officer Neff, Ms. Taylor's responses indicated she has been *extremely* bothered by repeated, disturbing, and unwanted memories of the experience. She has experienced an *extreme* loss in interest in activities she used to enjoy. She has been *extremely* bothered by difficulty sleeping.

Ms. Taylor also endorsed she has been bothered *quite a bit* by repeated disturbing dreams of the sexual assault; feeling very upset when something reminded her of the sexual assault; having strong physical reactions when something reminded her of the assault; avoiding memories, thoughts or feelings related to the sexual assault; blaming herself or someone else for the sexual assault and what happened after it; trouble experiencing positive feelings; being super alert, watchful, or on guard; and, feeling jumpy or easily startled.

She has been *moderately* bothered by suddenly feeling or acting as if the sexual assault were actually happening again; trouble remembering important parts of the sexual assault; having strong negative beliefs about herself, other people, or the world; having strong negative feelings such as fear, horror, anger, guilt, or shame; and, feeling distant or cut off from other people.

She has been *a little bit* bothered by irritable behavior, angry outbursts, or acting aggressively.

*Minnesota Multiphasic Personality Inventory-Third Edition (MMPI-3)*

The MMPI-3 is a standardized psychometric test of adult personality and psychopathology consisting of 335 true-false items. Ms. Taylor responded to all items producing a valid and interpretable profile. Her pattern of responding may indicate possible over-reporting or may occur in individuals with genuine, substantial psychological difficulties who report credible symptoms. In individuals with a history or current corroborating evidence of substantial dysfunction, this pattern likely indicates genuine responding.

Profile results indicate somatic complaints and emotional, thought, and interpersonal dysfunction. Individuals with similar profiles are preoccupied with poor health. They experience suicidal ideation, lack of positive emotions, self-doubt, perceived inefficacy, stress, worry, anxiety, fears, and compulsivity. Thoughts include ideas of persecution and aberrant perceptions. They are socially avoidant.

On the MMPI-3, Ms. Taylor reported a history of suicidal thoughts indicating she may be at risk for self-harm (When questioned by this evaluator, Ms. Taylor denied suicidal ideation, intent, or plan). Her responses indicated significant emotional distress including demoralization, feeling overwhelmed, and being extremely unhappy and dissatisfied with her life. She reported self-doubt and futility and feels insecure and inferior. She is self-disparaging and intropunitive. She also reported being indecisive and inefficacious. She feels incompetence and shame and lacks perseverance and self-reliance. She lacks positive emotional experiences.

Ms. Taylor reported generalized anxiety and anxiety-related problems. Symptoms of Posttraumatic Stress Disorder include intrusive thoughts, nightmares, dissociative symptoms, and panic. She complains of stress and feels incapable of controlling her anxiety. She worries excessively and ruminates. She engages in compulsive behavior.

As is common in victims of sexual assault, Ms. Taylor's responses indicate persecutory ideation and a belief others seek to harm her. She is suspicious and alienated from others and avoids social situations. She may experience interpersonal difficulties as a result.

Results suggest evaluation of malingering of cognitive symptoms and consideration of diagnoses of Major Depression and anxiety-related disorders (Generalized Anxiety Disorder, Posttraumatic Stress Disorder, Agoraphobia, and Obsessive Compulsive Disorder).

*Millon Clinical Multiaxial Inventory-Fourth Edition (MCMI-IV)*

The MCMI-IV is a standardized psychometric test of adult personality and psychopathology consisting of 195 true-false items. Profile results were valid. Results suggest severe mental distress.

Ms. Taylor's response style may indicate a tendency to magnify illness, an inclination to complain, or feelings of extreme vulnerability associated with current circumstances. Feelings of vulnerability are consistent with her recent history of sexual assault.

Responses support an avoidant personality disorder with a melancholic, compulsive, paranoid, and schizoid personality type. Results are indicative of a Major Depressive Disorder. Ms. Taylor is dysphoric and may contemplate the pointlessness of continued existence. She perceives herself as socially unworthy and flawed. She feels hopeless.

Ms. Taylor is suffering from prominent generalized anxiety. She has difficulty sleeping, is fatigued, and may complain of somatic issues. She is restless and easily distracted. She worries over potential catastrophes as well as trivial matters. She is sensitive to social humiliation, may have expressed her resentments inadvertently, and now fears upsetting repercussions.

Ms. Taylor experienced a traumatic event that involved a threatening situation during which she suffered intense fear. She continues to suffer distressing recollections and is likely to avoid exposure to cues that resemble or symbolize aspects of the trauma. She experiences nightmares or flashbacks and becomes terrified once again with heightened anxiety. Anticipation of anxiety may result in insomnia, irritability, panic attacks, hypervigilance, an exaggerated startle response, and/or a numb and detached disposition.

## SUMMARY & CONCLUSIONS

Emery Taylor enjoyed an ordinary life with her boyfriend and young daughter when in March of 2020 she became the victim of ongoing verbal, emotional, and physical harassment of a sexual nature by Officer Neff of the Louisville Metro Police Department.

Ms. Taylor initially trusted Officer Neff and his intentions because he was a uniformed police officer. She was the target of harassment including Officer Neff's persistence when she repeatedly declined his advances. She suffered unwanted touching and physical contact, unwelcome sexual advances, and repeated requests for personal information (i.e., contact information, photos). Moreover, she felt pressure to engage in sexual activity with Officer Neff.

These issues and related sequelae resulted in Ms. Taylor developing anxiety which has permeated nearly all areas of her life. To date, Ms. Taylor continues to suffer from anxiety and increased emotionality secondary to the harassment and sexual assault. She experiences repeated distressing memories, disturbing dreams, flashbacks, strong physical reactions, feelings of guilt and shame, strong negative beliefs about herself, being super-alert and on-guard, being easily startled, difficulty concentrating, and insomnia as a result of the harassment and sexual assault.

Ms. Taylor experiences anxiety when in the presence of police officers and in parking lots. She fears they are "out to get" her because she reported the sexual assault by Officer Neff. She also fears Robert Neff will seek to harm her. She explained: "He [was] a cop and can get my information".

Ms. Taylor's emotional pain is compounded by her perspective that Mr. Neff has not suffered any consequences for assaulting her. He was on paid leave from March until August and permitted to resign from his job rather than being terminated. He was offered therapy at no cost while she had to pay out of pocket for her therapy.

Results of the current evaluation indicate Ms. Taylor was honest and forthright in her presentation. There was no evidence of reduced effort or malingering. Clinical interview with Ms. Taylor, review of records as well as psychological test results indicate Ms. Taylor exhibited a change in psychological functioning after she was sexually assaulted by Officer Neff. She currently meets diagnostic criteria for Posttraumatic Stress Disorder, Generalized Anxiety Disorder, and Major Depressive Disorder.

The effects of sexual assault are permanent. The trauma has already resulted in Ms. Taylor declining a promotion because of her inability to cope with added stress. Sexual assault is known to result in chronic low self esteem, reduced confidence, strained relationships, social isolation, anxiety, depression, unemployment, increased likelihood of substance abuse, sleep disorders, and suicide.

Ms. Taylor would benefit from future treatment with a psychiatrist and doctoral level psychologist at a cost of $200-300 per hour. Treatment is estimated as weekly for 8 to 12 weeks with subsequent "booster" treatment session as needed for her lifetime.

**INTERNATIONAL CLASSIFICATION OF DISEASES-10TH REVISION-CLINICAL MODIFICATION (ICD-10-CM)**

Posttraumatic Stress Disorder, Chronic (F43.12)
Generalized Anxiety Disorder, Chronic (F41.1)
Major Depressive Disorder, Recurrent, Severe (F33.2)

Thank you for the opportunity to evaluate Ms. Taylor. I am available for further consultation as needed.

_Shannon Voor PhD_

Shannon S. Prior, Ph.D. (f/k/a Voor)
Licensed Psychologist - KY 129119
Licensed Psychologist - IN 20041025
Health Service Provider Distinction (HSP)
National Register of Health Service Psychologists -136978

cc: Ashley Abaray, Esq.
    Cooper and Friedman, PLLC

This is a preliminary report and is based on current information. I reserve the right to amend the report should additional information be received. Based on my knowledge, training, and experience as well as my review of the above-referenced documents, I have formed the opinions set forth in my expert report. Unless otherwise stated, all opinions expressed are within a reasonable degree of psychological probability.